IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| GARY HORNE, #180206, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:08-CV-662-TMH |
| | ) | [WO] |
| | ) | |
| LOUIS BOYD, et al., | ) | |
| | ) | |
| Respondents. | ) | |

# RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This cause is before the court on a 28 U.S.C. § 2254 petition for habeas corpus relief

filed by Gary Horne ["Horne"], a state inmate, on August 14, 2008.  In this petition, Horne

challenges a conviction for second degree assault imposed upon him by the Circuit Court

of Dale County, Alabama on May 18, 2005.[1]  The trial court sentenced Horne as a habitual

felony offender to twenty-two years imprisonment for this conviction.[2]

---

[1]The indictment issued against Horne charged him with attempted murder of John Williams in violation of *Ala. Code* § 13-A-6-2 and § 13-A-4-2 "by shooting [Williams] with a handgun...."  *Respondents' Exhibit A - Court Doc. No. 12-2* at 38.  After hearing the evidence, the jury returned a verdict against Horne for the lesser included offense of second degree assault, a Class C felony.  *Ala. Code* § 13-A-6-21(b).

[2]At the sentencing hearing, the State produced certified copies of Horne's prior felony convictions for first degree hindering prosecution and second degree robbery.  Hindering prosecution is a Class C felony, *Ala. Code* § 13A-10-43(b), whereas second degree robbery is a Class B felony.  *Ala. Code* § 13A-8-42(b).  The trial court utilized these convictions for purposes of sentence enhancement under the provisions of the Habitual Felony Offender Act, *Ala. Code* § 13A-5-9, *et. seq.*  Horne does not now nor has he ever disputed the existence of these prior felony convictions.  Based on the State's presentation of certified copies of two prior felony convictions and upon conviction of second degree assault, Horne "must be punished for a Class A felony."  *Ala. Code* § 13A-5-9(b)(1).  Since Horne used a firearm in commission of the assault, the applicable term of imprisonment is "not less than 20 years" nor more than life or 99 years imprisonment.  *Ala. Code* § 13A-5-6(1) and (4).

Horne filed a direct appeal, represented again by trial counsel, in which he argued that: (1) The State lost potentially exculpatory evidence; and (2) The trial court abused its discretion when it sentenced him pursuant to the Habitual Felony Offender Act because the State failed to provide him notice of his prior felony convictions as required by the Act. *Respondents' Exhibit B - Court Doc. No. 12-10* at 10. On August 11, 2006, the Alabama Court of Criminal Appeals affirmed Horne's assault conviction in an unpublished memorandum opinion. *Respondents' Exhibit E - Court Doc. No. 12-13*. The relevant portion of this opinion states as follows:

> Horne does not challenge the sufficiency of evidence, so a summary of the evidence presented at trial will suffice. The evidence tended to show that, on January 15, 2004, John Williams went to Gary Horne's apartment to play video games, which they often did together. Horne's sister, Shanice, also came to the residence, along with Horne's girlfriend, Kesha Paul. Shanice and Williams had a child together, and Shanice brought their son so Williams could visit with him. The record suggests that, sometime before this incident, even though Williams and Shanice had ended their relationship and Williams had married Christina and had children with her, Williams and Shanice continued to have an intimate relationship. At some time during the evening, Shanice and Kesha borrowed Williams's cell phone and placed a call to Williams's wife, who came to the apartment and told Williams he needed to leave. When Williams began to leave Horne's apartment, Shanice hit him and the two began "tussling into the kitchen." Horne intervened and began pushing Williams. Williams left the apartment.
>
> Williams drove away in his vehicle and his wife, Christina, followed him in her vehicle; the Williams's baby was riding with her. He noticed that Shanice was following them in her own vehicle. Williams decided to go to his mother's residence because, he said, his mother "don't allow no foolishness at her house." Williams said that, while he was driving, he telephoned Horne to tell him that he thought that Horne had not handled the situation well. Williams said that Horne threatened to hurt him, to which Williams replied that he could beat Horne in a fight. Horne asked where

Williams was, and Williams told him he was at his mother's. Williams had parked his car in the parking lot of his mother's apartment complex and he noticed that Shanice had pulled her vehicle behind his and blocked his vehicle. Horne arrived a few minutes later.

After Horne arrived, Williams got out of his car and stood in front of Christina's car. Horne had a gun tucked in his pants, Williams said. Horne was "talking smack" and "mouthing off" to Williams for a minute or two, and Williams told Horne that he was acting tough now that Horne had a gun. Williams asked Horne what he wanted to do, and Horne pushed him. Williams acknowledged that he attempted to strike Horne in return, and Horne shot him in the side. Williams denied having a gun.

Shanice Horne and Christina Williams provided testimony about the shooting that substantially corroborated the testimony Williams gave. Shanice testified that she had been angry that Christina came to Horne's house, and then she was angry that Williams left without finishing the argument, so she followed him. Shanice said that she did not see Horne shoot Williams because she had left her car to walk across the street to call her mother.

Kesha Paul, Horne's girlfriend, testified for the defense. She stated that, after Williams left Horne's house, Williams called Horne, threated to shoot Shanice, and told Horne he needed to come get his sister. She also said that Horne did not own a gun, but that Williams had a gun in his possession that night. Finally, John Dassinger, a friend of Horne's, testified that, in late January of 2004, he bought a Glock .40 caliber pistol from Williams. That pistol was in the possession of the police department because officers seized it after Dassinger was arrested for possession of marijuana and a controlled substance as well as possession of a pistol without a permit and possession of a pistol with altered serial numbers. [An officer involved in Dassinger's arrest testified that Dassinger advised officers he found the gun and drugs at an unidentified person's residence.]

I.

Horne first argues that his conviction must be reversed because the State lost potentially exculpatory evidence. Specifically, he argues, the State lost a .40 caliber bullet and shell casing and crime scene photographs that he might have been able to use to support his self-defense claim.

Prior to trial, Horne filed a motion for discovery and a motion to compel production of exculpatory evidence. He later filed a motion to dismiss based on a violation of Brady v. Maryland, 373 U.S. 83 (1963), due to the loss of the bullet, shell casing, and photographs. Testimony at [a

hearing on the motion to dismiss] established that the shell casing was collected on the night of the shooting and photographs were taken at that time. Residents of the apartment complex contacted police a day or two after the shooting and reported that they found a bullet in the parking lot near where the shooting occurred. An officer retrieved the bullet, which he said appeared to be a .40 caliber. Testimony further established that, at the time of the shooting, the police had just moved into new offices and they transferred evidence to the new evidence room under the supervision of an agent. The sole agent in charge of the evidence became too overwhelmed and could not keep track of the evidence, so the police department again began to maintain the evidence they had obtained. None of the officers who handled the evidence knew where it was located. Although the record does not contain a written order denying the motion to dismiss, the trial court obviously denied the motion as the case proceeded to trial. The State did not refer to any of the missing evidence in its case-in-chief. The parties agree that the police did not act in bad faith with regard to the lost evidence, and that the evidence was lost through negligence or inadvertence only.

Horne argues that the lost evidence was potentially exculpatory. He claims that the .40 caliber bullet might have matched the .40 caliber weapon that John Dassinger testified he purchased from the victim after the shooting, and that the testimony might show that the victim was shot with his own gun and not a gun that Horne brought to the fight. He argues that lack of bad faith in the loss of the evidence is immaterial because the evidence was crucial to his defense. Horne bases much of his argument on cases such as Brady v. Maryland, involving evidence that was suppressed -- whether intentionally or inadvertently -- by the police, but the State correctly notes that this case is governed by Arizona v. Youngblood, 488 U.S. 51 (1988), and its progeny, because the evidence here was lost before its exculpatory value could be determined and because the State did not rely on the lost evidence in its case-in-chief. We have previously recognized these important distinctions when reviewing cases in which evidence has been lost or destroyed. Holley v. State, 651 So.2d 50 (Ala.Crim.App. 1994), presents the exact issue now before us. Writing for the majority, Judge Bowen stated:

> "The appellant claims that he is entitled to a new trial because the State lost a hair sample that had been removed from his automobile during a search of that vehicle after he was arrested and after the vehicle was impounded. Citing Gurley v. State, 639 So.2d 557 (Ala.Cr.App. 1993), he argues that the loss of the hair sample, which he says could have

proved his innocence, rendered his trial fundamentally unfair.

"This case is different from <u>Gurley</u> and from <u>Ex parte Gingo</u>, 605 So.2d 1237 (Ala. 1992), cert. denied, 506 U.S. 1049, 113 S.Ct. 967, 122 L.Ed.2d 123 (1993), upon which <u>Gurley</u> relied, because in this case the State did not use or allude to the hair sample in its case-in-chief.  In <u>Gurley</u>, the State presented oral testimony about a charred object alleged to have been the victim's wallet, which had been lost by the time of trial, to establish the theft component of a capital indictment.  In <u>Gingo</u>, the prosecution used the results from tests conducted on allegedly hazardous waste materials, which had been destroyed by the time of trial, to establish a crucial element of the State's case.  Both <u>Gurley</u> and <u>Gingo</u> involved the State's use, at trial, of evidence that was unavailable for examination or testing by the defense.

"In this case, the hair sample was apparently lost before it could be subjected to forensic testing.  It was not available to the defense, but is was also not available to or used by the State.  The lost evidence in the appellant's trial is analogous to the missing evidence in <u>Arizona v. Youngblood</u>, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

"In <u>Youngblood</u>, the police failed to preserve a sodomy victim's semen-stained clothing, but the State did not introduce any evidence pertaining to the clothing in its case-in-chief.  The Supreme Court held that 'unless a criminal defendant can show bad faith on the part of the police, the failure to preserve potentially useful evidence does not constitute a denial of due process of law.'  488 U.S. at 58, 109 S.Ct. at 337.  The appellant's case falls squarely within the rule of <u>Youngblood</u>.

"The appellant did not claim at trial and he does not claim on appeal that the State's loss of the hair sample was the result of bad faith.  Therefore, the trial court did not err by failing to order an investigation into the disappearance of the evidence. See <u>Youngblood</u>, supra.  Furthermore, even if it had been determined that the hair sample did not match [the victim's] hair, that fact would not have precluded the appellant's guilt as [the victim's] kidnapper.  The appellant was not entitled to a new trial on this ground."

651 So.2d at 51-52.

This case is governed by the holdings in <u>Youngblood v. Arizona</u> and in <u>Holley</u>.  Horne is not entitled to any relief due to the inadvertent loss of evidence which the prosecution did not use or allude to at trial.

II.

Horne next argues that the trial court abused its discretion when it sentenced him pursuant to the Habitual Felony Offender Act ("HFOA"), §13A-5-9, Ala. Code 1975, because the State failed to provide him with the requisite prior notice of its intent to proceed under that statute.  Horne raised this claim below and the trial court rejected it, finding that Horne had been aware of the State's intent to seek sentencing under the HFOA and that the notice requirement had been satisfied.

The sentencing hearing in this case was set for July 13, 2005, approximately two months after the jury found Horne guilty of second-degree assault.  The State mailed defense counsel written notice of its intent to rely on the HFOA, but the record reflects that the notice was postmarked [by the postal service] on July 13, 2005, so Horne obviously did not receive the written notice prior to sentencing.  When the State offered certified copies of Horne's prior convictions at sentencing, Horne objected on grounds that he had not received any prior notice.  The prosecutor stated that the written notice had been filed a day or two before sentencing, [the record indicates the notice was filed with the trial court on July 12, 2005,] and also stated, "in the many discussions regarding a plea in this matter, it was known to the attorney in our discussions that Mr. Horne had two prior felonies.  During the first day of trial we had discussions in which [defense counsel] was advised that the Defendant had two prior felonies...." [Counsel for] Horne said he had not received any prior notice and, he said, "I still have not received any,"... apparently indicating that he was awaiting written notice.  The trial court found that Horne had two prior felony convictions, one for hindering prosecution, first degree, and the other for robbery, second degree, and that he had been represented by counsel in both cases.  Horne again objected based on the State's failure to notify him of its intent to rely on the HFOA provisions.  The prosecutor stated that defense counsel:

> "has known that [Horne] had these two prior felonies before the trial even started.  As part of our plea discussion, he's well aware of the fact his client had prior convictions and that we intended to use them.  If he wanted to investigate them, he's had adequate time to do so."

The trial court determined that the State had met its obligation to give notice of its intent to rely on the HFOA and of the two convictions it would

rely on.

After the trial court sentenced Horne pursuant to the provisions of the HFOA, Horne filed a motion to vacate the sentence. He argued that he had not received <u>written</u> notice of the State's intent to proceed under the HFOA until after sentencing. In that motion, he argued for the first time that during plea negotiations, the State did not mention which prior convictions it would use to enhance his sentence. The trial court held a hearing on this motion and on a motion for new trial. Horne argued at that hearing that he did not receive written notice of the State's intent to proceed under the HFOA until after sentencing. He argued, "The law and the rules requires (sic) that <u>prior written notice</u> be given of the State's intention to enhance under the H.F.O.A., which this attorney did not get, nor did the Defendant get either." (Emphasis added).

The trial court denied the motion to vacate Horne's sentence. The court noted, first, that the probation report filed on July 8, 2005, listed Horne's two prior felonies for robbery and hindering prosecution. The court noted that, on July 12, 2005, the State filed notice of its intent to proceed under the HFOA. Finally, the court stated that it had determined that Horne was aware that he had two prior [felony] convictions and that had "never been disputed."

On appeal, Horne continues to argue that the State failed to notify him in writing prior to sentencing of its intent to rely on the HFOA or of the prior convictions it intended to prove. He also argues that he received no oral notice prior to the sentencing hearing.

The Alabama Supreme Court has stated:

"The HFOA requires enhanced punishment for repeat felony offenders. Ala. Code 1975, § 13A-5-9. See, e.g., <u>McLester v. Smith</u>, 802 F.2d 1330 (11th Cir. 1986). For the HFOA to apply to a particular sentencing, the State must give reasonable notice, prior to the sentencing hearing, of the State's intention to proceed under the HFOA. Rule 26.6(b)(3), Ala.R.Crim.P..... Written notice is not required; oral notice will suffice. <u>Garrett v. State</u>, 480 So.2d 58 (Ala.Crim.App. 1985). Determination of the 'reasonableness' of the notice period is left to the trial judge's discretion, because the trial judge is present and is familiar with the circumstances of the case. <u>Humber v. State</u>, 481 So.2d 452 (Ala.Crim.App. 1985)."

<u>Connolly v. State</u>. 602 So.2d 452, 454 (Ala. 1992).

The State [acknowledges the record appears to reflect] that its written

notice was mailed on the day of sentencing and could not have provided timely notice.  To the extent Horne contends that the HFOA requires written notice, however, the law is clearly otherwise.  E.g., Connolly, supra; Perry v. State, 861 So.2d 1, 4 (Ala.Crim.App. 2002).  The State argued at sentencing, and defense counsel did not dispute at that time, that during plea negotiations, the State informed Horne that it intended to invoke the HFOA and to prove the two prior felonies for robbery and hindering prosecution.[3]  Thus, the record supports the trial court's determination that Horne had received oral notice before trial of the State's intent to invoke the HFOA and of the two prior felonies it would attempt to prove.  Therefore, as the trial court correctly determined at the sentencing hearing, the State's oral notice was adequate.  Horne is not entitled to any relief on this claim.

For the foregoing reasons, the judgment of the Circuit Court of Dale County is affirmed.

*Respondents' Exhibit E - Court Doc. No. 12-13* at 1-9 (citations to record and briefs omitted) (footnote in original omitted) (footnote added).

Horne filed an application for rehearing which the Alabama Court of Criminal Appeals overruled on September 1, 2006.  *Respondents' Exhibit G - Court Doc. No. 12-15.* The Alabama Supreme Court denied Horne's writ of certiorari and issued the certificate of judgment on October 13, 2006.  *Respondents' Exhibit I - Court Doc. No. 12-17.*

In January of 2007, Horne filed a state post-conviction petition pursuant to Rule 32 of the Alabama Rules of Criminal Procedure with the Circuit Court of Dale County,

---

[3]During the hearing on Horne's motion for new trial, the prosecuting attorney, in addressing the notice of intent to seek enhance punishment based on prior felony convictions, stated that during the week of trial he "had discussions with [defense counsel] about [possible] plea offers.  In those discussions, it was made clear to him that his client had two prior felony convictions and he was told what they were.  In all of those conversations, I talked about [Horne] having two priors and how that limited [the State's] ability to make a plea offer that would satisfy his client and how we were not able to do that.  So, he had adequate notice and was made very well aware of [the prior felony convictions and the State's intention of seeking an enhanced sentence under the Habitual Felony Offender Act]." *Respondents' Exhibit A - Court Doc. No. 12-4* at 34.  Defense counsel did not at this time dispute the assertions made by the prosecutor.  *Id.*  Due to Horne's prior felony convictions and his use of a firearm in the commission of the assault, the minimum term of imprisonment for such offense was twenty years.  *Ala. Code* § 13A-5-6-(4).

Alabama.  In this petition, Horne raised several claims for relief attacking his conviction for second degree assault, including claims regarding ineffective assistance of counsel, improper imposition of an enhanced sentence under the Habitual Felony Offender Act, loss of potentially exculpatory evidence and the failure of Rex Tipton to appear as a witness, claims relevant to the disposition of the instant federal habeas petition. *Respondents' Exhibit M - Court Doc. No. 12-22* at 12-23; *Respondents' Exhibit M - Court Doc. No. 12-21* at 25-35.

On May 17, 2007, the trial court conducted a hearing on Horne's claims of "ineffective assistance of counsel because all other issues are precluded.... [since] he appealed them or he could have raised them at his trial or [on direct appeal]." *Respondents' Exhibit M - Court Doc. No. 12-21* at 51.  On June 12, 2007, the trial court issued an order denying Horne's Rule 32 petition.  *Respondents' Exhibit M - Court Doc. No. 12-21* at 37-40.  In this order, the trial court held that:

> Those issues concerning lost exculpatory evidence, use of the Habitual Offender Act, prosecutorial misconduct and allegations concerning jurors and juror deliberation [are precluded from review because these claims] were raised at trial or could been raise at trial or were raised on post trial motion or could have been raised on post trial motions or were raised on appeal or could have been raised on appeal.
> The Court further finds that the deliberations of the jury are privileged and affidavits or testimony by jurors cannot be used to impeach the verdict of the jury unless they tend to show extraneous facts influenced the verdict. Details of deliberation of jurors mental operations and thought processes and of the effect of evidence admitted, of rulings by the court and of the court's instructions are not admissible to impede the verdict of the jury.
> And as the Judge presiding over the trial of this case and after review

of the transcript of the evidence, the Court finds that Attorney Tracy Nickson's conduct was not such as to undermine the proper functioning of the adversarial process so that the trial or appeal of this cause could not be relied upon to produce a just result.  The Court finds that Counsel's assistance was reasonable and effective considering all of the circumstances of the case.  The Court further finds that the decisions made by counsel concerning the trial and appeal of this case and his trial strategy was the result of reasonable, professional judgment.

The Court further finds that in applying the standards set forth in Strickland v. Washington, 466 U.S. 688, 106 Sup.Ct. 2052, 80 LEd.2d 674 (1984), the Petitioner's claim that his rights were violated and that he did not receive a fair trial because of ineffective assistance of counsel are not well taken.

The Court further finds that there is no showing of prejudice.  The Defendant has not shown that there was a reasonable probability that but for counsel's alleged unprofessional errors, the result would have been different.

The Court further finds that counsel's representation did not fall below an objective standard of reasonable probability that the result would have been different if counsel's trial of the case had been different.

... [T]he court shall not use hindsight to second guess trial counsel's decisions or strategy.  As all courts have held, judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after [it] has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy....  And further the petitioner has the burden of pleading and proving by a preponderance of the evidence ... the facts necessary to extend ... relief.

The Court has considered each contention ... in the defendant's petition and finds that they are not well taken.

Therefore, it is ORDERED and ADJUDGED as follows:

That the relief prayed for in the Rule 32 petition filed by the defendant is hereby denied.

*Respondents' Exhibit M - Court Doc. No. 12-21* at 37-40.

Horne appealed this decision.  In his brief to the Alabama Court of Criminal Appeals Horne, made the general assertion that the trial court "improperly denied ... his issues [of] ineffective assistance of counsel." *Respondents' Exhibit N - Court Doc. No. 12-23* at 6.  In support of this assertion, Horne argued counsel's performance fell below the objective standard of reasonableness set forth in *Strickland* because (i) counsel mistakenly advised during trial proceedings he requested issuance of a subpoena for Rex Tipton, a witness who would testify that a day or two after the shooting he retrieved a bullet from the area of the shooing which appeared to be a .40 caliber projectile, when the subpoena was not issued until over a month after Horne's trial;[4] and (ii) counsel failed to properly object/seek a mistrial with respect to the testimony obtained by the prosecutor on cross-examination regarding a potential prior harassment charge against Horne and did not raise this issue on direct appeal.[5]  *Respondents' Exhibit N - Court Doc. No. 12-23* at 16, 18.  In

---

[4]The testimony of Rex Tipton would not have proven the plaintiff's theory of self-defense as Tipton could only testify that a day or so *after* the shooting of John Williams he located a bullet in the area of the shooting which *appeared to be* a .40 caliber projectile.  Tipton could not provide testimony which in any way linked this bullet to the shooting of Williams.

[5]The alleged prejudicial testimony appears as follows:
Q:  Did you make a comment [during your direct testimony] about Mr. Williams would fight a woman?
A:  Yes, sir.
Q:  Wouldn't Mr. Horne fight with a woman?
A:  He never hit me.
Q:  Never hit you?
A:  No.
Q:  Wasn't he charged with domestic violence against you?

addition, Horne also argued: (1) The trial court erroneously precluded review of his substantive claims for relief; (2) The indictment is defective as it fails to allege the essential element of what specific type of firearm Horne used to commit the offense as it merely references use of a "handgun" with no indication the handgun was either a deadly or dangerous instrument; and (3) The second degree robbery conviction on which the court relied to enhance his sentence is void because (i) the indictment for first degree robbery did not include the element of aiding or abetting, and (ii) the trial court did not wait three days between accepting his guilty plea and imposing sentence. *Id*. at 15, 17. On March 21, 2008, the Alabama Court of Criminal Appeals entered a memorandum opinion addressing the claims raised by Horne. This opinion, in pertinent part, reads as follows:

> The appellant argues that the circuit court did not have jurisdiction to render a judgment and impose a sentence for second-degree assault because the indictment charging him with attempted murder did not allege all of the essential elements of second-degree assault. Specifically, he contends that, although the indictment alleged that he had shot the victim with a handgun, it did not allege what type of gun was used or that the gun was a deadly weapon or dangerous instrument. Although the appellant couches his claim in jurisdictional terms, it is actually a nonjurisdictional claim that is

---

A:  No, he was not charged with domestic violence....
Q:  And he was charged with domestic violence against you, isn't that correct?
A:  No, he wasn't.  I never pressed charges against him and I never said he hit me.
Q:  Did he go to Court because he was charged with domestic violence against you?
A:  No ... I don't know.
Q:  Back in June of 2003 wasn't he charged with harassment against you?
A:  I don't know if he was or not.  I didn't call the police and I didn't press no charges against him.

*Respondents' Exhibit A - Court Doc. No. 12-3* at 80.  Upon objection from defense counsel, the prosecutor posed no further questions with respect to the domestic violence charge or any act of violence by Horne.  *Id*. at 81.  It is clear from the foregoing, the witness provided no testimony which indicated Horne had a prior charge or conviction for domestic violence and specifically denied she ever sought such charges against him.  The witness also provided no testimony of any prior bad act by Horne as she denied any physical abuse at the hands of Horne.

precluded because he could have raised it at trial and on appeal, but did not. See Rule 32.2(a)(3) and (5), Ala.R.Crim.P.; Ex parte Seymour, 946 So.2d 536 (Ala. 2006) (holding that a defective indictment does not divest a circuit court of subject-matter jurisdiction.

II,

The appellant also argues that his counsel rendered ineffective assistance at trial and on appeal.  Specifically, he contends that

1) Rex Tipton, an allegedly necessary witness, did not appear at trial and that counsel said he had subpoenaed Tipton, but a witness browser from the Administrative Office of Courts ("AOC") showed that the subpoena for Tipton was not issued until more than a month after his trial; and

2) the State questioned his girlfriend about a prior domestic violence charge, but counsel did not make a sufficiently specific objection, did not ask the trial court to instruct the jury to disregard evidence about the charge, did not move for a mistrial, did not raise this issue in his motion for new trial, and did not raise this issue on appeal.

To prevail on an ineffective-assistance-of-counsel claim, the appellant must show that his counsel's performance was deficient and that counsel's deficient performance prejudiced him.  See Brown v. State, 663 So.2d 1028 (Ala.Crim.App 1995) (citing Strtickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d (1984)).

"In determining whether a defendant has established his burden of showing that his counsel was ineffective, we are not required to address both considerations of the Strickland v. Washington test if the defendant makes an insufficient showing on one of the prongs. Id. at 697, 104 S.Ct. at 2069. In fact, the Court explained that '[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.' Id. We defer to this guidance and address the 'prejudice' prong, for '[w]ith respect to the prejudice component, the lack of merit of [Thomas's] claim is even more stark.' Id. at 699, 104 S.Ct. at 2070."

Thomas v. State, 511 So.2d 248, 255 (Ala.Crim.App. 1987) (footnote omitted).

The purpose of ineffectiveness review is not to grade counsel's

13

performance.  See Strickland [v. Washington], [466 U.S. 668,] 104 S.Ct. [2052] at 2065 [(1984); see also  White v. Singletary, 972 F.2d 1218, 1221 (11ᵗʰ Cir.1992) ('We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.). We recognize that '[r]epresentation is an art, and an act or omission that is unprofessional in one case may be sound or even brilliant in another.'  Strickland, 104 S.Ct. at 2067. Different lawyers have different gifts; this fact, as well as differing circumstances from case to case, means the range of what might be a reasonable approach at trial must be broad. To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'  Burger v. Kemp, 483 U.S. 776, 107 S.Ct. 3114, 3126, 97 L.Ed.2d 638 (1987)."

Chandler v. United States, 218 F.3d 1305, 1313 (11ᵗʰ Cir. 2000) (footnote omitted).  Finally,

"[i]n Strickland [v. Washington, 466 U.S. 668 (1984)], we made clear that, to establish prejudice a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'  Id., at 694, 104 S.Ct. [at] 2052.  In assessing prejudice, we reweigh the evidence in aggravation against the totality of available mitigating evidence."

Wiggins v. Smith, 539 U.S. 510, 534, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003).

The appellant submitted an affidavit from one of the jurors who served on his case in an attempt to establish prejudice with regard to his ineffective-assistance-of-counsel claims.  In that affidavit, the juror discussed the effect the testimony regarding the domestic violence charge had on his decision and how Tipton's expected testimony would have affected his decision if it had been presented at trial.  In its order denying the petition, the circuit court found as follows:

"[T]he deliberations of the jury are privileged and affidavits or testimony by jurors cannot be used to impeach the verdict of

14

the jury unless they tend to show extraneous facts influenced the verdict. Details of deliberation of jurors mental operations and thought processes and of the effect of evidence admitted, of rulings by the court and of the court's instructions are not admissible to impede the verdict of the jury.

"And as the Judge presiding over the trial of this case and after review of the transcript of the evidence, the Court finds that Attorney Tracy Nickson's conduct was not such as to undermine the proper functioning of the adversarial process so that the trial or appeal of this cause could not be relied upon to produce a just result. The Court finds that Counsel's assistance was reasonable and effective considering all of the circumstances of the case. The Court further finds that the decisions made by counsel concerning the trial and appeal of this case and his trial strategy was the result of reasonable, professional judgment. The Court further finds that in applying the standards set forth in Strickland v. Washington, 466 U.S. 688, 106 Sup.Ct. 2052, 80 LEd.2d 674 (1984), the Petitioner's claim that his rights were violated and that he did not receive a fair trial because of ineffective assistance of counsel are not well taken.

"The Court further finds that there is no showing of prejudice. The Defendant has not shown that there was a reasonable probability that but for counsel's alleged unprofessional errors, the result would have been different.

"The Court further finds that counsel's representation did not fall below an objective standard of reasonable probability that the result would have been different if counsel's trial of the case had been different."

.... The record supports the circuit court's findings, and we adopt them as part of this memorandum. Therefore, the appellant has not satisfied his burden of pleading and proof pursuant to Rule 32.3 and 32.6(b), Ala.R.Crim.P., and Strickland with regard to his allegations of ineffective-assistance-of-counsel.

III.

Finally, the appellant argues that the trial court did not have jurisdiction to render a judgment and impose a sentence on the second-degree robbery conviction that was used to enhance his sentence. However,

"'[a] Rule 32 petition attacking the appellant's most recent

15

(triggering) convictions is not the proper forum in which to challenge the validity of the appellant's prior (underlying) convictions.  The validity of a prior conviction should be challenged by filing a petition for post-conviction relief from that conviction.  Lochli v. State, 565 So. 2d 294, 296 (Ala.Cr.App. 1990).  Compare Ex parte Madden, 602 So.2d 1192 (Ala. 1991) (reaffirming the rule that when a defendant attacks the validity of a prior felony conviction used for purposes of enhancement, the proper forum is a separate Rule 32 petition addressed to that prior conviction).'

"Crum v. State, 611 So.2d 495, 496 (Ala.Crim.App. 1992) (emphasis in original)."

McHarris v. State, 623 So.2d 400, 401 (Ala.Crim.App. 1993).  Therefore, the appellant is not entitled to relief on this ground. [In addition, although the appellant raised additional grounds for relief in the circuit court, he does not pursue such claims on appeal.  Therefore, these claims are abandoned and not properly before the court for review.]

Because the appellant's claims were precluded or not sufficiently proved, the circuit court properly denied his petition.  See Rule 32.7(d), Ala.R.Crim.P.  Accordingly, we affirm the circuit court's judgment.

*Respondents' Exhibit Q - Court Doc. No. 12-26* at 4-8 (footnotes and citation to record

omitted).

Horne filed an application for rehearing on March 25, 2008.  In this application,

Horne agrued that:

.... Mr. Nickson, his trial and appellate counsel did not use reasonable, professional judgment ... [because] there was a reasonable probability that but for counsel's unprofessional errors; intentionally lying about subpoenaing Lt. Rex Tipton and not arguing on direct appeal [prosecutorial misconduct] by bringing up appellant's character to fight women and a prior bad act of harassment [on] a domestic violence charge appellant received in June 2003, in presence of the jury ... the proceedings would have been different....

***

.... If [counsel] would of raised [the prejudicial comments issue] up

on appeal, the appellant would have been successful in winning a new trial....
.... I pray ... that this court will grant rehearing on these issues.

*Respondents' Exhibit U - Court Doc. No. 23-2* at 1-4.

The Alabama Court of Criminal Appeals overruled the application for rehearing on April 4, 2008. *Respondents' Exhibit R - Court Doc. No. 12-27.* Horne then filed a petition for writ of certiorari with the Alabama Supreme Court. In this petition, Horne alleged the Alabama Court of Criminal Appeals erred when it denied him relief on his claims that counsel provided ineffective assistance when counsel repeatedly failed to properly challenge the actions of the prosecutor in eliciting testimony regarding prior bad acts and did not effectuate service of a subpoena on Rex Tipton prior to trial. *Respondents' Exhibit S - Court Doc. No. 12-28* at 1-10.[6] The Alabama Supreme Court denied Horne's petition for writ of certiorari on August 8, 2008. *Respondents' Exhibit T - Court Doc. No. 12-29*.

In his habeas petition, as amended, Horne asserts the following claims for relief:

1. Counsel provided ineffective assistance when he (i) lied at trial regarding issuance of a subpoena for Rex Tipton, (ii) did not obtain a copy of the indictment prior to trial, (iii) failed to request a mistrial for the prosecutor questioning a witness regarding prior bad acts, and (iv) failed to challenge on direct appeal the aforementioned line of questioning by the prosecutor. *Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1* at 5. In an amendment to the petition filed on August 28, 2009, Horne further argued counsel provided ineffective assistance "in not disputing" receipt of oral notice of the State's intent to seek an enhanced sentence and not

---

[6]The court conducted thorough reviews of both the application for rehearing and petition for writ of certiorari filed by Horne on appeal from the denial of his Rule 32 petition. These reviews establish Horne raised only issues regarding counsel's purported ineffectiveness regarding the lack of a timely subpoena for Rex Tipton and counsel's failures, both before the trial court and on direct appeal, to properly challenge the prosecutor's cross-examination of a witness with respect to prior bad acts allegedly committed by Horne.

17

"informing [Horne] of this intent the day of trial...; if he tells me then I don't go to trial." *Petitioner's Second Amendment to the Complaint - Court Doc. No. 9* at 1.   Petitioner asserts he had no knowledge of any discussions regarding potential plea offers. *Id*.  He also acknowledges "[t]here was never a plea deal" offered by the State, *Affidavit in Support of Petition - Court Doc. No. 1-2* at 1, but maintains if counsel had informed him of the potential for sentence enhancement and the plea discussions he would have taken any deal offered by the State. *Petitioner's Second Amendment to the Complaint - Court Doc. No. 9* at 1.

2. The trial court erred in imposing sentence under the Habitual Felony Offender Act as the petitioner did not have the notice required by state law, *see* Rule 26.6(b)(3)(ii), *Alabama Rules of Criminal Procedure*, of the State's intent to seek an enhanced sentence. *Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1* at 5.  In his affidavit in support of the petition, Horne for the first time asserts a violation of due process and federal law arising from the prosecutor's provision of an alleged "falsified and back-dated" document to the trial court at the sentencing hearing.  *Affidavit in Support of Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1-6* at 17.[7]

3. The loss of potentially exculpatory evidence by law enforcement officials constituted a violation of due process and violated the ruling of *Arizona v. Youngblood*, 488 U.S. 51 (1988).  *Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1* at 6.

4. The State failed to provide reasonable notice of its intent to seek

---

[7]Horne identifies the alleged falsified document as the "Notification of Habitual Offender Status" submitted by the prosecutor at the sentencing hearing.  *Petitioner's Exhibit C - Court Doc. No. 1-3* at 14.  Horne argues the prosecutor falsified the document by back dating it.  The prosecutor prepared the notification on July 11, 2005 and certified he placed a copy of the notification in the United States mail addressed to trial counsel in Prattville, Alabama on this same date.  The notification was filed with the Circuit Court of Dale County on July 12, 2005, a day prior to sentencing.  The envelope addressed to trial counsel is postmarked by the postal service July 13, 2005.  Trial counsel stated he received the notification on July 15, 2005, two days after sentencing.  The delay in trial counsel's actual receipt of the notice via the United States mail does not establish that the prosecutor falsified the document.  Moreover, this claim is procedurally defaulted as it has *never* been presented to the state courts and Horne presents no basis of cause for this default.  In addition, the Alabama Court of Appeals did not base its finding of proper notice on trial counsel's receipt of the notification and, therefore, Horne cannot establish any prejudice relative to submission of the notification.  Thus, Horne's claim alleging a federal due process violation is precluded from review by this court.

enhancement prior to imposition of the sentence as required by *Oyler v. Boles*, 368 U.S. 448, 452 (1962). *Petitioner's First Amendment to the Petition - Court Doc. No. 7* at 3.

In their answer to the petition, the respondents reference procedural default by Horne with respect to the issues presented in his federal habeas corpus petition and the amendments thereto. After thorough review of the petition, as amended, and relevant state court documents, the court discerns that Horne's claims of ineffective assistance of counsel with respect to (i) counsel's failure to argue at the sentencing hearing he did not receive oral notice of the State's intent to seek an enhanced sentence under the Habitual Felony Offender Act, (ii) counsel's failure to advise the petitioner of plea discussions in which the State referenced its intent to seek an enhanced sentence due to petitioner's habitual offender status, and (iii) his failure to obtain a copy of the indictment prior to trial, the falsified document claim and the allegation regarding a federal due process violation for lack of reasonable notice of the State's intent to proceed under the Habitual Felony Offender Act as required by *Oyler* are procedurally defaulted. *Day v. McDonough,* 547 U.S. 198, 206, 126 S.Ct. 1675, 1682, 164 L.Ed.2d 376 (2006) ("[T]he Courts of Appeals have unanimously held that, in appropriate circumstances, courts, on their own initiative, may raise a petitioner's procedural default, i.e., a petitioner's failure properly to present an alleged constitutional error in state court, and the consequent adequacy and independence of state-law grounds for the state-court judgment."); *see also Moon v. Head,* 285 F.3d 1301, 1315 n. 17 (11th Cir.2002). Specifically, these claims of ineffective assistance of

counsel are procedurally barred from review by this court as Horne failed to properly and fairly present such claims to the state courts on appeal from denial of the Rule 32 petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *Smith v. Jones*, 256 F.3d 1135, 1140-1146 (11th Cir. 2001), *cert. denied*, 534 U.S. 1136, 122 S.Ct. 1081, 151 L.Ed.2d 982 (2002); *Brownlee v. Haley*, 306 F.3d 1043, 1065 (11th Cir. 2002); *Holladay v. Haley*, 209 F.3d 1243, 1254 n. 9 (11th Cir.), *cert denied*, 531 U.S. 1017 (2000); *Bailey v. Nagle*, 172 F.3d 1299, 1303 (11th Cir. 1999); *Collier v. Jones*, 901 F.2d 770, 773 (11th Cir. 1990); *Teague v. Lane*, 489 U.S. 288 (1989).  The court notes that the applicable defaults occurred when Horne did not raise these specific issues in his brief on appeal of the denial of his Rule 32 petition, the application for rehearing nor his petition for writ of certiorari to the Alabama Supreme Court during such appeal.  *Snowden v. Singletary,* 135 F.3d 732, 736 (11th Cir.1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").  As for the issue of a falsified notification, Horne did not present this claim to the state courts in accordance with the State's procedural rules.  With respect to his claim of a federal due process violation regarding the notice of intent for sentence enhancement provided by the State, the court discerns that Horne never presented this precise federal constitutional claim to the state courts, either at trial, on direct appeal or in the Rule 32 proceedings.

The respondents further argue that Horne is entitled to no relief on his remaining claims of ineffective assistance of counsel, i.e., counsel failed to timely issue a subpoena for Rex Tipton and made false statements at trial regarding issuance of a subpoena for this witness, counsel failed to request a mistrial based on questions regarding a prior domestic violence charge, and counsel failed to challenge on direct appeal the prosecutor's actions with respect to obtaining such testimony, his claim the trial court erred in imposing sentence under the Habitual Felony Offender Act as the State failed to provide notice as required by state law, and the claim challenging loss of potentially exculpatory evidence as the state appellate court properly adjudicated these claims on the merits. *Price v. Vincent*, 538 U.S. 634, 123 S.Ct. 1848, 1852 (2003); *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495 (2000).

Upon review of the § 2254 petition, the answer of the respondents, Horne's responses to the answer and orders of this court, the state court record, various opinions issued by the state courts and applicable federal law, this court finds that no evidentiary hearing is required, Rule 8(a), *Rules Governing Section 2254 Cases in United States District Courts*, and concludes that the petition for habeas corpus relief is due to be denied.

## II.  DISCUSSION

### A.  Actual Innocence - Independent Claim

To the extent Horne alleges he is innocent of the assault for which he stands convicted, the law is well settled "that '[c]laims of actual innocence ... have never been

held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.'  *Herrera v. Collins,* 506 U.S. 390, 400, 113 S.Ct. 853, 860, 122 L.Ed.2d 203 (1993).  It is not our role to make an independent determination of a petitioner's guilt or innocence based on evidence [presented at trial or] that has emerged since the trial.  'This rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution--not to correct errors of fact.'  *Id.*"  *Brownlee*, 306 F.3d at 1065.  In accordance with the foregoing directives, Horne is entitled to no relief from this court on any independent claim of actual innocence.

## B.  Procedural Default

Several claims presented by Horne in his petition for habeas corpus relief are procedurally barred from review as Horne failed to present these claims to the state courts in accordance with the State's applicable procedural rules either at trial, on direct appeal or in the proceedings related to his Rule 32 petition.  *O'Sullivan*, 526 U.S. at 845, 119 S.Ct. at 1732-1733 ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including review by the state's court of last resort, even if review in that court is discretionary.); *Pruitt v. Jones*, 348 F.3d 1355, 1359 (11th Cir. 2003) ("Nothing in *Boerckel's* reasoning suggests that a different rule should apply in state post-conviction appeals as opposed to direct appeals."); *Smith*, 256 F.3d at 1140 ("Alabama's

discretionary direct review procedures bring Alabama prisoner habeas petitions within the scope of the *Boerckel* rule.").   Upon thorough review of the answers filed by the respondents and the state court records, the court gleans the relevant procedural defaults as follows:

(1)  The claims of ineffective assistance of counsel regarding failure to obtain a copy of the indictment prior to trial,[8] not disputing receipt of oral notice of the State's intent to seek an enhanced sentence and failure to advise the petitioner of discussions on potential plea offers are procedurally defaulted because Horne failed to raise these specific claims of ineffective assistance on appeal of his Rule 32 petition.  *Kelley v. Secretary for Department of Corrections*, 377 F.3d 1317, 1344 (11th Cir. 2004) (To properly exhaust a claim in the state courts, a habeas petitioner must present each appropriate state court with not only the theory of relief "but also ... the specific assertions of fact that might support relief.").  Horne's habeas claims of ineffective assistance of counsel as to obtaining a copy of the indictment prior to trial, challenging receipt of oral notice of the State's intent to seek an enhanced sentence and providing Horne notice of discussions regarding an enhanced sentence are therefore procedurally defaulted as the petitioner did not present these "claims to the state courts such that a reasonable reader would understand each

---

[8]The court notes that trial counsel likewise represented Horne during his plea of not guilty and waiver of arraignment.  At this time, both counsel and Horne acknowledged receipt of a copy of the charge lodged against Horne in the indictment.  *Petitioner's Exhibit G - Court Doc. No. 1-3* at 21; *Respondents' Exhibit A - Court Doc. No. 12-2* at 40.  Horne then entered a plea of not guilty to this charge and waived arraignment on the charge lodged against him.  Thus, this claim of ineffective assistance of counsel is without merit.

claim's particular legal basis and specific factual foundation." *Id*. at 1344-1345.[9]

(2) The claim presented by Horne with respect to a federal due process violation regarding the adequacy of the State's notice of intent to seek an enhanced sentence under the Habitual Felony Offender Act is procedurally defaulted because Horne did not present

---

[9]In his response filed on December 10, 2009, Horne initially argues he "did raise [the ineffectiveness] issues [regarding oral notice and lack of plea discussion information] up on his appeal after the denial of his Rule 32.... Petitioner also asserts that these issues were presented in his brief to the Alabama Supreme Court in his writ of certiorari.... The petitioner can not direct this honorable court to the exact location in the record but it's all in there." *Petitioner's Response to Order - Court Doc. No. 24* at 2. Horne, however, filed an amendment to this response on December 14, 2009 in which he retracts the aforementioned arguments of exhaustion and concedes his appeal of the Rule 32 petition did ***not*** contain issues of ineffective assistance of counsel with respect to (i) counsel's failure to argue he did not receive oral notice of the State's intention to proceed under the Habitual Felony Offender Act, and (ii) his failure to advise Horne of plea discussions in which the State referenced its intention to seek an enhanced sentence due to petitioner's habitual offender status. *Petitioner's Amendment to Response - Court Doc. No. 26* at 1 (Petitioner exhausted some claims "up to the Alabama Supreme Court but not with these (2) [claims]. The petitioner understands why these (2) claims [of ineffective assistance of counsel] more than likely will be procedurally barred."). Subsequently, Horne filed an additional response in which he does not dispute the procedural default of his claim challenging counsel's failure to obtain a copy of the indictment prior to trial. *Petitioner's Response to Order - Court Doc. No. 28* at 1-2.

Upon exhaustive review of the *pro se* documents filed by Horne on appeal of his Rule 32 petition, the court finds that Horne did not raise these three particular instances of ineffective assistance of counsel in his initial brief to the Alabama Court of Criminal Appeals. *Respondents' Exhibit N - Court Doc. No. 12-23*. The only specific issues of ineffective assistance of counsel referenced in the initial appellate brief relate to the lack of a timely subpoena for Rex Tipton and the admission of character evidence with respect to a prior domestic violence charge. In his application for rehearing, Horne again argued issues relative to counsel's failure to properly subpoena Rex Tipton, including his allegations counsel lied regarding issuance of the subpoena, his failure to seek a mistrial based on the bad character evidence elicited by the prosecutor and counsel's failure to challenge the admissibility of this evidence on direct appeal. *Respondents' Exhibit U - Court Doc. No. 23-2* at 1-4. Finally, in his petition for writ of certiorari, Horne argued the appellate court erred in denying him relief on his claims of ineffective assistance of counsel. *Respondents' Exhibit S - Court Doc. No. 12-28* at 1. In support of this assertion, Horne again merely presented arguments with respect to counsel's failure to properly object at trial, seek a mistrial and challenge on direct appeal the testimony regarding prior bad acts, and counsel's failure to properly subpoena Rex Tipton prior to trial and his erroneous assertion at trial that he did timely subpoena this witness. *Id*. at 2-10. Thus, the claims of ineffective assistance of counsel with respect to the failure of counsel to challenge oral notice of prior convictions/potential sentence enhancement, advise petitioner of plea discussions and obtain a copy of the indictment prior to trial are procedurally barred from federal habeas review because Horne did not properly exhaust these issues in the state courts as he failed to raise these claims in the initial brief on appeal of his Rule 32 petition, the application for rehearing and the petition for writ of certiorari during such appeal.

24

this precise claim during trial, on direct appeal or in his Rule 32 petition.[10]  Specifically,

throughout the state court proceedings, Horne presented this claim in terms of a violation

of the notice requirements mandated by state law and did not present the claim to the state

courts in terms of a federal due process claim under either the United States Constitution

or *Oyler* thereby resulting in the procedural default of such claim.  *Baldwin v. Reese*, 541

U.S. 27, 32, 124 S.Ct. 1347, 1351 (2001); *Gray v. Netherland*, 518 U.S. 152, 162-163, 116

S.Ct. 2074, 2081, 135 L.Ed.2d 457 (1996); *Duncan v. Henry,* 513 U.S. 364, 364-365

(1995).[11]  Although Horne argues he did raise the "claim of [a] due process violation for

_____

[10]At the beginning of the sentencing hearing, the prosecutor produced certified copies of Horne's two prior felony convictions on which it sought enhancement of the sentence.  *Respondents' Exhibit A - Court Doc. No. 12-4* at 18.  In response to trial counsel's assertion he "did not get prior notice of those whatsoever[,]" the prosecutor asserted that in previous discussions with trial counsel regarding the State's inability to make a suitable plea offer he had informed counsel of the State's intent to seek enhanced punishment under the Habitual Felony Offender Act.  *Id*.  The trial court then determined Horne "had two prior felony convictions ... [o]ne was hindering prosecution in the first degree and the other one was robbery in the second degree."  *Id*.  The court then allowed Horne an opportunity to be heard on these convictions.  *Id*. at 18-19.  Counsel referenced a possible lack of representation on the prior felony convictions and the court determined Horne "had a lawyer in both cases."  *Id*. at 19.  Horne did not dispute the existence of the prior convictions nor did he seek a continuance of sentencing on the ground he had received inadequate notice.  It is therefore clear that prior to imposition of sentence Horne received reasonable notice of the prior convictions and an opportunity to be heard relative to these convictions.  This is all that is required by *Oyler v. Boles*, 368 U.S. 448, 452 (1962).  The court therefore concludes that no federal due process violation occurred.


[11]In his December 10, 2009 response, Horne argues he presented "the unconstitutional sentencing [claim] ... on my direct appeal from my original conviction."  *Petitioner's Response to Order - Court Doc. No. 24* at 1-2.  However, the documents filed by Horne during direct appeal establish that he did not present a challenge to his sentence enhancement in terms of the violation of a federal constitutional right.  Specifically, Horne did not indicate a federal basis for the lack of notice claim by citing a federal source of law in conjunction with the claim nor did he label the claim as "federal" in any argument presented to or document filed with the state courts; instead, during the various state court proceedings, Horne cited state rules of criminal procedure and state case law in support of this claim.  There is no reference in the section of his initial appellate brief addressing the sentencing issue to either a violation of the United States Constitution or federal case law.  *Respondents' Exhibit C - Court Doc. No. 12-11* at 21-25.  Moreover, in his *pro se* application for rehearing, Horne argued that the lack of prior notice violated only state rules of law "prescribed and promulgated by the Alabama Supreme Court."  *Respondent's Exhibit F - Court Doc. No. 12-14* at 14.  Finally, in his *pro se* petition for writ of certiorari, Horne limited his argument to the following issue: "The Court of Criminal Appeals in its ... memorandum opinion misapprehended the facts of petitioner's case."  *Respondents' Exhibit H - Court Doc. No. 12-16*.  Consequently, the federal due process claim Horne now seeks to

lack of reasonable notice of the State's intent to proceed under the HFOA ... at sentencing ..., at the hearing on my Motion to Vacate Sentence" and throughout the direct appeal process, *Petitioner's Response to Order - Court Doc. No. 28* at 1, it is clear that the issue raised by Horne in the state courts dealt solely with whether notice had been provided to Horne in accordance with state law.  During the state court proceedings, Horne did not cite any source of federal law, either statutory or case law, in support of this issue nor did he ever label the claim "federal" before the state courts.  This federal due process claim is therefore procedurally defaulted.  *Baldwin*, 541 U.S. at 32; *Gray*, 518 U.S. at 162-163. Moreover, the law is well settled that "it is not sufficient merely that the federal habeas petitioner has been through the state courts, *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made, *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted)."  *Kelley*, 377 F.3d at 1343.

(3) To the extent Horne asserts a due process claim arising from alleged back dating of the habitual offender notification prepared by the State, this claim is procedurally defaulted as Horne likewise did not raise this specific claim in the state courts.

As a prerequisite to filing a federal habeas action, the petitioner must have properly

---

raise is procedurally defaulted.  *Gray*, 518 U.S. at 162-163.

exhausted state court remedies, either on direct appeal or in a state post-conviction petition, 28 U.S.C. § 2254(b), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan,* 513 U.S. at 365 (quoting *Picard v. Connor,* 404 U.S. 270, 275 (1971) (citation omitted)); *Kelley*, 377 F.3d at 1342-1344 (11th Cir. 2004) (a petitioner cannot raise claims in federal court if those claims, including the factual basis for the claims, were not first properly exhausted in state court.). To exhaust state remedies in accordance with the exhaustion requirement, the petitioner must fairly present every issue raised in his federal petition to each appropriate state court, including the state's highest court, alerting that court to the federal nature of the claim and a statement of the facts which entitle him to relief. *Duncan,* 513 U.S. at 364.  In order to obtain federal review of an alleged violation of a right protected by the United States Constitution, the petitioner must present the issue to the state courts in terms of the applicable federal right. *Id*.; *O'Sullivan,* 526 U.S. at 845; *Picard,* 404 U.S. at 277-278. "[F]or purposes of exhausting state remedies, a claim for relief in a habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." *Gray*, 518 U.S. 152, at 162-163; *McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) ("In order to be exhausted, a federal claim must be fairly presented to the state courts."); *Edwards v. Carpenter*, 529 U.S. 446, 452, 120 S.Ct. 1587, 1591-1592 (2000) (the exhaustion requirement is not satisfied when "the

ineffective-assistance claim was 'presented' to the state courts [but] not presented in the manner that state law requires.").

In *Baldwin*, the Supreme Court further addressed the requirement of "fair presentation" holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition, brief, or other similar document that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." 541 U.S. at 32. The Court further noted that "a litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id*. With regard to this statement, the Eleventh Circuit in *McNair* advised:

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion. However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'" *McNair [v. Campbell],* 315 F. Supp.2d at 1184 (quoting *Vasquez v. Hillery,* 474 U.S. 254, 257, 106 S.Ct. 617, 620, 88 L.Ed.2d 598 (1986)). This is consistent with settled law established by the Supreme Court... We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-1303 (citations omitted).

In *Kelley*, the Eleventh Circuit extensively addressed the requirements attendant to

"fair presentation" of claims regarding ineffective assistance of counsel.

> It is not sufficient merely that the federal habeas petitioner has been through the state courts, *Picard v. Connor,* 404 U.S. 270, 275-76, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971), nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made, *Anderson v. Harless,* 459 U.S. 4, 6, 103 S.Ct. 276, 277, 74 L.Ed.2d 3 (1982) (citations omitted). The petitioner must present his claims to the state courts such that they are permitted the "opportunity to apply controlling legal principles to the facts bearing upon (his) constitutional claim." *Picard,* 404 U.S. at 277, 92 S.Ct. at 513 (alteration in original).

> Thus, the prohibition against raising nonexhausted claims in federal court extends not only to broad legal theories of relief, but also to the specific assertions of fact that might support relief. For example, habeas petitioners may not present particular factual instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts. *Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992). As we explained,

>> allowing a habeas petitioner to allege a single instance of ineffective assistance in his state post-conviction proceedings and then proceed to federal court to allege additional instances would be contrary to the state's "full and fair opportunity to address the claim on the merits." The state would never have the benefit of evaluating the claim using a fully developed set of facts. This would not be the "serious and meaningful" exhaustion of claims that Congress intended.

> *Id.*; *see also Carriger v. Lewis,* 971 F.2d 329, 333 (9th Cir. 1992) (en banc) (holding that, where the habeas petitioner properly raised only one ineffective assistance claim on collateral attack in state court, he could seek federal relief based on that specific claim, but not based on other alleged attorney defects that were not presented to the state courts); *Maynard v. Lockhart,* 981 F.2d 981, 984-85 & n. 1 (8th Cir. 1992) ("To preserve an allegation of ineffective assistance for federal habeas review, a petitioner must present that specific allegation to a state court."). Furthermore, habeas petitioners cannot preserve otherwise unexhausted, specific claims of

ineffective assistance merely by arguing that their lawyers were ineffective in a general and unspecified way. *See Weeks [v. Jones]*, 26 F.3d [1030] at 1044-46 [(11th Cir. 1994)] (rejecting petitioner's argument that "the general claim of ineffective assistance in state court preserves for federal review all alleged instances of ineffectiveness, regardless of whether evidence of a particular act was presented to the state court"). In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice. In sum, to preserve a claim of ineffective assistance of counsel for federal review, the habeas petitioner must assert this theory of relief and transparently present the state courts with the specific acts or omissions of his lawyers that resulted in prejudice.

377 F.3d at 1343-1344 (emphasis added). The court further advised that "[t]o ensure exhaustion, petitioners must present their claims in this manner of clarity throughout 'one complete round of the State's established appellate review process.' *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 1732, 144 L.Ed.2d 1 (1999). As long as state supreme court review of a prisoner's claims is part of a state's ordinary appellate review procedure, prisoners of that state must present their claims to the state supreme court to preserve those claims for federal review, even if review by that court is discretionary. *See id*. at 848-49, 119 S.Ct. at 1734." *Kelley*, 377 F.3d at 1345.

With respect to the ineffective assistance of counsel claims identified in this section, the federal due process claim regarding the lack of reasonable notice of sentence enhancement and the document falsification claim, Horne failed to properly exhaust these claims in the state courts and no remedy remains before the state courts in which Horne can

obtain review of these claims.  These claims are therefore procedurally defaulted.  This court may reach the merits of Horne's procedurally defaulted claims "only in two narrow circumstances.  First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both 'cause' for the default and actual 'prejudice' resulting from the default.  *See Murray v. Carrier,* 477 U.S. 478, 485, 106 S.Ct. 2639, 2644, 91 L.Ed.2d 397 (1986); *[Wainwright v.] Sykes,* 433 U.S. [72,] 87 [(1977)]....  Second, a federal court may also grant a habeas petition on a procedurally defaulted claim, without a showing of cause or prejudice, to correct a fundamental miscarriage of justice.  *Murray,* 477 U.S. at 495-96, 106 S.Ct. at 2678.  A 'fundamental miscarriage of justice' occurs in an extraordinary case, where a constitutional violation has resulted in the conviction of someone who is actually innocent.  *Id.*"  *Henderson,* 353 F.3d at 892.

### 1.  <u>Cause and Prejudice</u>.

> "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court."  *Wright v. Hopper,* 169 F.3d 695, 703 (11th Cir.1999).  To establish "prejudice," a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different.  *Id.*; *Crawford v. Head,* 311 F.3d 1288, 1327-28 (11th Cir.2002).

*Henderson,* 353 F.3d at 892.  Horne has failed to demonstrate cause for his failure to present these federal habeas claims to the state courts in compliance with applicable procedural rules.  Since Horne fails to establish cause for his defaults, the court need not

address the prejudice prong.[12]   Nevertheless, this court may still reach the merits of Horne's

procedurally defaulted claims in order to prevent a fundamental miscarriage of justice

   **2.   <u>Fundamental Miscarriage of Justice</u>**.   In his response filed on December 10,

2009, Horne argues "[i]t would be a miscarriage of justice if this court refuses to address"

his procedurally defaulted claims.   *Petitioner's Response to Order - Court Doc. No. 24* at

2.   The miscarriage of justice standard is directly linked to actual innocence.   *Schlup v.*

*Delo*, 513 U.S. 298, 321 (1995).   Actual innocence is not an independent claim; rather, it

is the "gateway" through which a petitioner must pass before a court may consider

constitutional claims which are defaulted.   *Id.* at 315.   This exception applies where a

petitioner establishes that "a constitutional violation has probably resulted in the conviction

of one who is actually innocent."   *Murray v. Carrier*, 477 U.S. 478, 496 (1986); *Schlup v.*

*Delo*, *supra*.   "To establish actual innocence, [a habeas petitioner] must demonstrate that

... 'it is more likely than not that no reasonable juror would have convicted him.'   *Schlup*

*v. Delo*, 513 U.S. 298, 327-328, 115 S.Ct. 851, 867-868, 130 L.Ed.2d 808 (1995)."

*Bousley v. United States*, 523 U.S. 614, 623 (1998).   "[T]he *Schlup* standard is demanding

---

[12]As previously determined, however, no prejudice exists with respect to the falsified document claim as the Alabama Court of Criminal Appeals did not rely on the challenged document in finding that the State, in accordance with state law, provided reasonable notice of its intent to seek an enhanced sentence.   Moreover, any claim of ineffective assistance of counsel related to the falsified document claim cannot establish cause for the procedural default of this claim because Horne failed to properly exhaust such a claim of ineffective assistance of counsel in the state courts.   *Murray v. Carrier*, 477 U.S. 478 (1986) (ineffective assistance of counsel will excuse a procedural default only when the ineffective assistance claim itself has been independently and properly raised); *Hill v. Jones*, 81 F.3d 1015, 1030 (11th Cir. 1996) (a procedurally defaulted claim of ineffective assistance of counsel cannot serve as cause to excuse the default of a separate claim).

and permits review only in the "'extraordinary'" case." *House v. Bell*, 547 U.S. 518, 538, 126 S.Ct. 2064, 2077 (2006). Thus, "[i]n the usual case the presumed guilt of a prisoner convicted in state court counsels against federal review of defaulted claims." 547 U.S. at 537, 126 S.Ct. at 2077. "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency. *See Sawyer v. Whitley*, 505 U.S. 333, 339, 112 S.Ct. 2514, 2518-2519, 120 L.Ed.2d 269 (1992)." *Bousley*, 523 U.S. at 623-624; *Doe v. Menefee*, 391 F.3d 147, 162 (2nd Cir. 2004) ("As *Schlup* makes clear, the issue before [a federal district] court is not legal innocence but factual innocence."). *Schlup* observes that "a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.... To be credible, such a claim requires petitioner to support his allegations of constitutional error with ***new reliable evidence*** -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial. Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." 513 U.S. at 324 (emphasis added).

Horne has failed to make the requisite showing of actual innocence as he has presented no "new reliable evidence" nor do his allegations suggest that any such evidence exists which could satisfy the stringent standard set forth in *Schlup*. In the absence of such showing, Horne's procedurally defaulted claims are therefore precluded from federal

habeas review.

## C. Adjudicated Claims

The instant petition for federal habeas relief is governed by 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act ["AEDPA"]. "A habeas petitioner whose claim was adjudicated on the merits in state court is not entitled to relief in federal court unless he meets the requirements of 28 U.S.C. § 2254(d)." *Price*, 538 U.S. 634, 638, 123 S.Ct. 1848, 1852; *Williams*, 529 U.S. 362, 402, 120 S.Ct. 1495, 1518. Under the requisite provisions of 28 U.S.C. § 2254(d), with respect to a claim adjudicated on the merits in state court, federal habeas relief from a state court judgment may not be granted unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams*, the Supreme Court held:

> Under the "contrary to" clause a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

34

529 U.S. at 412-413, 120 S.Ct. at 1523.

The Court subsequently explained that habeas relief is appropriate when a petitioner demonstrates "that a decision by a state court is 'contrary to' ... clearly established [Supreme Court] law if it 'applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.' *Williams v. Taylor*, 529 U.S. 362, 405-406, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000)." *Price*, 538 U.S. at 640, 123 S.Ct. at 1853. Additionally, federal review in a habeas action "is limited to whether the state court's decision was objectively unreasonable in the light of clearly established federal law. *Williams*, [529 U.S. at 409],120 S.Ct. at 1521." *Hawkins v. Alabama*, 318 F.3d 1302, 1310 (11ᵗʰ Cir. 2003); *Parker v. Head*, 244 F.3d 831, 835 (11ᵗʰ Cir. 2001), citing *Williams*, *supra* ("[F]ederal habeas relief [is] available under the 'unreasonable application' standard only if the state court's application of clearly established federal law was 'objectively unreasonable.'"). Thus, a federal court is not to decide "the correctness *per se* ... of the state court decision" but only the "objective reasonableness" of such decision. *Brown v. Head*, 272 F.3d 1308, 1313 (11ᵗʰ Cir. 2001). Moreover, "an ***unreasonable*** application of federal law is different from an ***incorrect*** application of federal law." *Williams*, 529 U.S. at 410, 120 S.Ct. at 1522 (emphasis in original). "Under § 2254(d)(1)'s 'unreasonable

35

application' clause, ... a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable."  529 U.S. at 411, 120 S.Ct. at 1522.

Federal district courts are likewise directed to determine whether the state court based its findings on "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  A state court's determinations of fact shall be "presumed to be correct," and the habeas petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).  However, even when the state court addresses a question of law, this court is not authorized "to evaluate [a petitioner's] claim *de novo* rather than through the lens of § 2254(d)."  *Price*, 538 U.S. at 639, 123 S.Ct. at 1852.  The Supreme Court admonishes that such *de novo* evaluation "exceeds the limits imposed on federal habeas review by 28 U.S.C. § 2254(d)...."  538 U.S. at 636, 123 S.Ct. at 1851.  As is clear from the foregoing, a federal "district court's review ... [of claims decided by the state courts] is greatly circumscribed and highly deferential to the state courts."  *Crawford v. Head*, 311 F.3d 1288, 1295 (11th Cir. 2007).  The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible

under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002).

Horne properly presented his federal habeas claims regarding (i) ineffective assistance of counsel in subpoenaing Rex Tipton, failing to request a mistrial based on the prosecutor's eliciting testimony of prior bad acts and failing to challenge on direct appeal the aforementioned line of questioning, (ii) the loss of potentially exculpatory evidence, and (iii) error by the trial court in imposing sentence under the Habitual Felony Offender Act as the State did not provided the notice required by state law to the state courts for their review. After extensive discussions, both on direct appeal and on appeal from the denial of Horne's Rule 32 petition, the Alabama Court of Criminal Appeals decided each of these claims adversely to Horne. This court's assessment of Horne's state-adjudicated claims under the provisions of 28 U.S.C. § 2254(d)(1) is therefore appropriate.

1. <u>Ineffective Assistance of Counsel</u>. On appeal from the trial court's denial of the Rule 32 petition, the Alabama Court of Criminal Appeals addressed the merits of Horne's claims of ineffective assistance of counsel. The appellate court applied *Strickland v. Washington*, 466 U.S. 668 (1984) and its progeny in determining that counsel had not provided ineffective assistance in his representation of Horne. *Respondents' Exhibit Q - Court Doc. No. 12-26* at 4-7. *Strickland* sets forth the clearly established federal law on this issue. Thus, this court will determine whether rejection of the petitioner's claims of ineffective assistance of counsel by the state courts "resulted in a decision that ... involved

an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

The Sixth Amendment right to counsel exists to protect the fundamental right to a fair trial.  The petitioner must satisfy the requirements of a two-pronged test to prevail on his claims of ineffective assistance of counsel.  First, the petitioner must establish that his attorney's performance "fell below an objective standard of reasonableness." *Strickland* 466 U.S. at 688.  "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*.  Once this threshold test is met, the petitioner must then show that the deficient performance of his counsel prejudiced his defense. *Id.* at 687.  To establish prejudice, the petitioner is required to show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.  Unreliability or unfairness does not result if counsel's ineffectiveness does not deprive the defendant of any substantive or procedural right to which the law entitles him. *Williams v. Taylor*, 529 U.S. at 393 n. 17 (2000).  There is a strong presumption that counsel's performance was reasonable and adequate and great deference is shown to choices dictated by reasonable trial strategy. *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).  Any review of an ineffective assistance of counsel claim is conducted from the perspective of defense counsel based on facts "as they were known to counsel at the time of the representation." *United States v. Teague*,

953 F.2d 1525, 1535 (11th Cir. 1992).

The test used to evaluate claims of ineffective assistance of trial counsel applies equally to an analysis of claims of ineffective assistance of appellate counsel. *Jackson v. Dugger*, 931 F.2d 712, 715 (11th Cir. 1991). Appellate counsel cannot be deemed ineffective for failing to raise meritless claims on appeal. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001); *United States v. Nyhuis*, 211 F.3d 1340, 1344 (11th Cir. 2000); *Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

The state courts did not decide Horne's claims of ineffective assistance of counsel "differently than [the Supreme] Court has [in a case based] on a set a of materially indistinguishable facts" nor did the state court apply a rule that contradicts governing federal law. *Williams*, 362 U.S. at 412. Consequently, the state appellate court's rejection of these claims was not contrary to actual Supreme Court decisions.

This court must therefore resolve whether the Alabama Court of Criminal Appeal's decision to reject the ineffective assistance of counsel claims was an unreasonable application of the *Strickland* standard.

> In determining whether the state court's decision is an unreasonable application of the law set out in [applicable] Supreme Court decisions, we need not decide whether we would have reached the same result as the state court if we had been deciding the issue in the first instance. Instead, we decide only whether the state court's decision of the issue is

> objectively unreasonably. *See Williams v. Taylor*, 529 U.S.
> 362, 411, 120 S.Ct. 1495, 1522, 146 L.Ed.2d 389 (2000)
> ("Under § 2254(d)(1)'s 'unreasonable application' clause,
> then, a federal habeas court may not issue the writ simply
> because that court concludes in its independent judgment that
> the relevant state-court decision applied clearly established
> federal law erroneously or incorrectly.  Rather, that application
> must also be unreasonable."); *Brown v. Head*, 272 F.3d 1308,
> [1313] (11th Cir. 2001)("It is the objective reasonableness, not
> the correctness *per se*, of the state court decision that we are to
> decide.").

*Wright v. Secretary for the Dept. of Corrections*, 278 F.3d 1245, 1256 (11th Cir. 2002).

The Alabama Court of Criminal Appeals applied *Strickland* in its review of Horne's Rule 32 claims and determined Horne failed to establish that counsel provided ineffective assistance either at trial, during sentencing or on direct appeal.  Upon a thorough review of the evidentiary materials submitted in this case, it is clear that the rejection of Horne's ineffective assistance of counsel claims by the Alabama Court of Criminal Appeals was objectively reasonable as Horne failed to show that the performance of counsel fell below a subjective standard of reasonableness or that counsel's actions in any way prejudiced his case.  In addition, the decision issued by the Alabama Court of Criminal Appeals constituted a reasonable determination of the facts in light of the evidence presented by the parties. Habeas relief is therefore unwarranted on Horne's claims of ineffective assistance of counsel.

2. <u>Loss of Evidence</u>.  Horne argues the State and/or law enforcement officials "lost

potentially exculpatory evidence to wit: 40 caliber projectile and photos of the scene."

*Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1* at 6.  On direct appeal, the

Alabama Court of Criminal Appeals relied upon *Arizona v. Youngblood*, 448 U.S. 51

(1988) and determined this claim adversely to Horne.  *Respondents' Exhibit E - Court Doc.*

*No. 12-13* at 3-6.  ("[T]his case is governed by Arizona v. Youngblood, 488 U.S. 51

(1988), and its progeny, because the evidence here was lost before its exculpatory value

could be determined and because the State did not rely on the lost evidence in its case-in-

chief....  'In Youngblood, the police failed to preserve a sodomy victim's semen-stained

clothing, but the State did not introduce any evidence pertaining to the clothing in its case-

in-chief.  The Supreme Court held that "unless a criminal defendant can show bad faith on

the part of the police, the failure to preserve potentially useful evidence does not constitute

a denial of due process of law."  488 U.S. at 58, 109 S.Ct. At 337.  The appellant's case

falls squarely within the rule of Youngblood.'  ...  Horne is not entitled to any relief due to

the inadvertent loss of evidence which the prosecution did not use or allude to at trial.").

The Alabama Court of Criminal Appeals did not decide Horne's challenge to the

loss of evidence "differently than [the Supreme] Court has [in a case based] on a set a of

materially indistinguishable facts" nor did the state courts apply a rule that contradicts

governing federal law.  *Williams*, 529 U.S. at 413, 120 S.Ct. at 1523.  Consequently, the

state appellate court's rejection of this claim was not contrary to actual Supreme Court

decisions.  Further, a thorough review of the evidentiary materials submitted in this case establishes that the state court's rejection of Holloway's argument was objectively reasonable and likewise constituted a reasonable determination of the facts in light of the evidence presented by the parties.  Thus, Holloway is not entitled to relief from this court on his challenge to the loss of potentially exculpatory evidence.

   3.   Sentence Enhancement - Lack of Notice Required by State Law.[13]   Horne complains the State failed to provide him adequate notice of its intent to seek sentence enhancement under the Habitual Felony Offender Act as required by the provisions of state law.  *Petition for Writ of Habeas Corpus Relief - Court Doc. No. 1* at 5.  This claim entitles Horne to no relief.  *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus relief does not lie for errors of state law."); *Beverly v. Jones*, 854 F.2d 412 (11th Cir. 1988).  On direct appeal, the Alabama Court of Criminal Appeals held that the trial court properly determined Horne received reasonable notice of the State's intent to proceed under the Habitual Felony Offender Act.  "The ... [State's] written notice was mailed to defense

---

[13]"At a reasonable time prior to the [sentencing] hearing, the defendant shall be given notice of the prior conviction or convictions upon which the state intends to proceed."  Rule 26.6(b)(3)(ii), *Alabama Rule of Criminal Procedure*.  Oral notice of State's intention to proceed under the Habitual Felony Offender Act is sufficient.  *Garrett v. State*, 480 So.2d 58, 60 (Ala. Cr. App. 1985) ("In this case, the appellant was informed of the State's intention immediately following the jury verdict.  The trial judge asked the appellant at this time whether he had anything to say before the sentence was imposed.  Appellant and his attorney had a brief discussion at which time appellant announced that he was ready for sentencing....  Neither the appellant nor his attorney raised any objection, or sought a continuance on the ground that there had been inadequate notice....  The appellant had an opportunity to be heard and an opportunity to object [to the prior convictions] but chose not to do so.  Under these circumstances the appellant was not prejudiced by the sentencing procedure wherein he was sentenced immediately after the jury returned its [guilty] verdict...."); *Connolly v. State*, 602 So.2d 452, 454 (Ala. 1992) ("Written notice [of State's intention to proceed under HFOA] is not required; oral notice will suffice.").

counsel on the day of sentencing and could not have provided timely notice [as required by Rule 26.6(b)(3)(ii)]. To the extent Horne contends that the HFOA requires written notice, however, the law is clearly otherwise. E.g., Connolly, supra; Perry v. State, 861 So.2d 1, 4 (Ala.Crim.App. 2002). The State argued at sentencing, and defense counsel did not dispute at that time, that during plea negotiations, the State informed Horne that it intended to invoke the HFOA and to prove two prior felonies for robbery and hindering prosecution. Thus, the record supports the trial court's determination that Horne received oral notice before trial of the State's intent to invoke the HFOA and of the two prior felonies it would attempt to prove. Therefore, as the trial court correctly determined at the sentencing hearing, the State's oral notice was adequate. Horne is not entitled to any relief on this claim." *Respondents' Exhibit E - Court Doc. No. 12-13* at 8-9.

"[A] state court's interpretation of its own laws or rules provides no basis for federal habeas relief, since no question of a constitutional nature is involved." *McCullough v. Singletary*, 967 F.2d 530, 535 (11th Cir. 1992); *Carrizales v. Wainwright*, 699 F.2d 1053, 1054-1055 (11th Cir. 1983) ("Questions of pure state law do not raise issues of constitutional dimension for federal habeas corpus purposes.... [Any claim based on] interpretation of ... [a state's] laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). "Federal courts entertaining petitions for writs of habeas corpus must follow the state court's interpretation

of a state law absent a constitutional violation." *Hunt v. Tucker*, 93 F.3d 735, 737 (11th Cir. 1996); *Walton v. Attorney General of the State of Alabama*, 986 F.2d 472, 475 (11th Cir. 1993) (federal court is bound by decision of state court that no state law has been violated).

Horne has failed to show that the Alabama appellate court's construction of Alabama law violated his federal right to due process. Moreover, a thorough review of the record establishes that the state court's rejection of Horne's argument constituted a reasonable determination of the facts in light of the evidence presented by the parties. In light of the foregoing, Horne is due no relief with respect to his claim challenging the notice he received of the State's intention to seek enhancement of his sentence in accordance with the Habitual Felony Offender Act as this claim fails to implicate denial of any constitutionally protected right.[14]

## III. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The 28 U.S.C. § 2254 petition for habeas corpus relief filed by Gary Horne be DENIED.

2. This case be DISMISSED with prejudice.

---

[14]In addition, the court previously determined that the federal due process claim presented by Horne arising from the enhancement of his sentence is procedurally defaulted and precluded from review by this court. The court also deemed this claim without merit as the trial court, prior to imposition of sentence, provided Horne notice of the prior felony convictions on which the State sought enhancement of his sentence and allowed him an opportunity to be heard with respect to these convictions. Notice and the opportunity to be heard relative to the prior convictions is all that is required by the Due Process Clause of the Constitution. *Oyler*, 368 U.S. at 504. "[D]ue process does not require that notice be given prior to the trial on the substantive offense." *Id*.

It is further

ORDERED that on or before  January 8, 2009 the parties may file objections to the Recommendation.   Objections must specifically identify the findings in the Recommendation to which the party is objecting.   Frivolous, conclusive or general objections will not be considered by the District Court.   The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings in this Recommendation shall bar the party from a de novo determination by the District Court of issues addressed in the Recommendation and shall bar the party from attacking on appeal the factual findings contained in the Recommendation which are accepted and/or adopted by the District Court, except upon grounds of plain error or manifest injustice.   *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc*., 667 F.2d 33 (11th Cir. 1982); *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all decisions issued by the former Fifth Circuit and handed down prior to September 30, 1981).

Done this 21st day of December, 2009.


/s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE